## BENNETT K. RAY v. MARY RAY.

Court of Appeals.  October 15, 1926.

Petition for Certiorari denied by Supreme Court February 12, 1927.

1. **Husband and wife.  Husband has the legal right to select the domicile.**
    The husband has the legal right to select the domicile and it is the duty of the wife to go with her husband to the home of his selection and to reside with him where he desires to live.

2. **Divorce.  Evidence.  Evidence held to show wife justified in leaving her husband.**
    In an action for divorce brought by the husband on the ground of desertion where the evidence showed that the husband had left the wife, prior to the last separation and that after he came back to live with his wife, he had been mean to her and had gotten drunk and that before the last separation he had sold all of their property and was going to move to another state but refused to promise her that he would take care of her if she went with him, **held** that the wife was justified in not going with her husband to the new domicile and that the husband was not entitled to a divorce on the ground of desertion.

Appeal from Chancery Court, Gibson County; Hon. V. H. Holmes, Chancellor.

Taylor, Adams & Freeman, of Trenton, for appellant.
Elder & Elkins, of Trenton, for appellee.

SENTER, J.   From the decree of the Chancellor dismissing complainant's bill for a divorce complainant has appealed to this court and has assigned errors.  We deem it unnecessary to take up and discuss each of the several assignments of error separately.

The complainant and the defendant were married in Gibson county, Tennessee, on the 8th day of October, 1919.  They were both young, about 18 years of age, at the time of the marriage. The ground for divorce alleged in the bill is willful desertion continuing for a period of more than two years.  The Chancellor in dismissing the bill held that the defendant had willfully deserted the complainant, but that she had sufficient cause for the desertion. We have examined the record, and the following summary of the facts presents the question to be determined on this appeal.

After the marriage of this young couple in October, 1919, they lived together as husband and wife at the home of complainant's father until July, 1920.  On August 16, 1920, a child was born to the marriage.  About two weeks after the birth of the child the complainant left Gibson county and his wife and baby and went to the State of Texas, claiming that the state of his health at that

time necessitated his going to Texas. It appears that the complainant invited the defendant to go with him, but she was not physically able to make the trip so soon after the birth of their child, and requested that he wait until she was strong enough to make the trip. The complainant declined to delay his going, but told defendant that she could come later when she got strong enough to travel. After he left her and went to Texas he never wrote to her, but within a few days after reaching El Paso, Texas, he joined the United States Army. It was some months before she discovered that he had joined the army. He had made no provision for her or their child, and after she discovered that he had joined the army, she made application for a part of his compensation, which was granted. He continued in the army for several months. She made application for allotment for herself and child to the Federal government and was allowed $15 per month out of the complainant's compensation and the government allowed her $15 for herself and $10 for the child during the time he was in the United States Army. During all the time he was away from her and in the army he did not write to the defendant or otherwise communicate with her and did not make any voluntary provision for her or their child, and the allotment made by the government was upon her application. After being away about one year, complainant returned to his father's home in Gibson county, but only remained a few days and then went to the State of Illinois. The defendant wrote complainant a letter while he was in Illinois requesting his return to her and their child. In response to this letter complainant came home, and after talking matters over with the defendant he went back to her and they lived together until about the 16th day of November, 1923, when the final separation occurred. It appears that when the complainant came back to the defendant and resumed marital relations with her, that he had contracted a venereal disease, which he communicated to her, and which venereal disease developed on her in about ten days or two weeks after the marital relations were resumed. The complainant states that before entering into the conjugal relations with the defendant he told her that he had contracted this disease but had been cured, but as a matter of precaution employed artificial protection. The defendant denies that he told her before they entered into conjugal relations of his condition but he did tell her immediately afterwards. They were both treated by the same physician, resulting in a cure for both of them. She continued to live with the complainant until the final separation in 1923. It appears that the complainant drank more or less during the time they were living together, and by a preponderance of the evidence it appears that he was accustomed to neglect her by staying out late at night, and

that when she remonstrated with him because of his conduct he would curse her, but did not use physical violence toward her. In the fall of 1923 complainant stated to the defendant that he was going back to El Paso, Texas, claiming that he was going to make his permanent home in Texas on account of his health, and that he had tuberculosis. He then persuaded her to agree to go to Texas with him, and to have a sale and sell their household goods. She reluctantly agreed that they would sell out their household goods and she would go with him to Texas if his state of health required it. He proceeded to sell their household goods and to convert the same into money as soon as she gave her consent. It appears that they had made all arrangements to go to Texas, although she was somewhat reluctant, on account of his conduct, to leave her home and people and to go so far away with him. It appears that a day or two before they were to leave she had a serious talk with the complainant and told him of her fears of his conduct and asked him if he would promise to treat her right if she went with him. She states that complainant refused to make her any promises as to his future treatment of her and of his conduct, but told her she could do as she God damn pleased about going. It appears that after the household goods had been sold and the proceeds converted into money that he began drinking and came home in a drunken condition and that her brother had to put him to bed, and that he vomited and soiled the bed and the room, and it was following this incident that she told him unless he would promise her that he would treat her better and quit drinking that she would be afraid to go with him to Texas, and it was then he told her that he would make her no promises and that she could do as she God damn pleased about going. She then stated that she was afraid to go with him and would not go. This occurred a day or two before he was to leave for Texas, and they then unpacked their personal effects, clothing, etc., and separated the same. It appears that some time prior to the sale of their household goods he told a Mr. Campbell, who appears to be a reputable man, and the brother-in-law of the defendant, that he was going to sell out his things and go to Texas and that he was not going to take his wife with him, and solicited Mr. Campbell to go with him, and then stated to Mr. Campbell that the defendant would not get any of his property and that he was going to leave her. It appears that the complainant, after the defendant refused to go with him, left for Texas, and remained there until shortly before the bill was filed in this case, and that during all that time he did not write to the defendant and never sought to have her come to him in Texas. He has not contributed anything toward her support or maintenance, nor has

he contributed toward the support and maintenance of their child since the separation occurred in November, 1923.

While it is contended for complainant with much earnestness that he urged the defendant to go with him to Texas, and that he was compelled to go on account of his health, and that this was well known to the defendant, and that he was sincere in his efforts to persuade her to go with him, this is denied by the defendant. She admits that the complainant, before the sale of their household goods, asked her to go with him to Texas, and after gaining her consent to the sale and to go with him, his conduct and clear indifference toward her was not such as to indicate a sincere desire upon his part that she go.

A careful analysis of the record brings us to the inevitable conclusion that complainant was not sincere in requesting defendant to go with him to Texas. He was seeking to gain her consent to a sale of their household goods so as to convert the same into money, after he effected this purpose his conduct and attitude toward her, considering his past conduct, was not such as to invite confidence, or a sincere desire to have her go with him. In support of this conclusion is the conversation had with Mr. Campbell prior to the sale in which he stated that he was going to sell out and go to Texas and did not intend to take his wife and child with him and that she would not receive anything from his property. When she made the request of him that he would promise to amend his conduct and treatment of her if she would go with him, he refused to make her any promises, but on the contrary, told her that she could do as she God damn pleased about going.

We are therefore of the opinion that this invitation and solicitation that she would remove with him to the State of Texas was not made in good faith, or with the expectation that she would go, but was intended to procure her consent to a sale of their household goods so that he could convert it into money, and then by his conduct and treatment of her discourage her from going with him. Considering his past conduct and his past life, where he had once before willfully abandoned her under the apparent guise that he was a victim of tuberculosis, and leaving her when their infant child was only two weeks old and when he knew that she was not strong enough to make the long journey, and then as soon as he got to El Paso, Texas, in place of writing her to come to him and arranging for her to go to him, he joined the United States Army. Certainly some physical examination was made of him before he was admitted to the army. He evidently did not disclose that he was a married man with a wife and child dependent upon him, else the allotment of a part of his compensation as made by the United States government would have been made without her having to

make formal application for the same. At the time he left it was with the distinct understanding that as soon as she was strong enough to travel he would send for her. His willful intention to abandon and desert his wife and child at that time is abundantly shown by his failure to communicate with her in any way, but to join the United States Army without her knowledge, and without making any provision whatever for her or their child. When he ultimately returned after having been discharged from the army, it appears that she initiated the resumption of the marriage relation by writing to him while he was in Illinois, asking him to return to her. He did return to her, and we think by a preponderance of the evidence communicated to her the venereal disease by not disclosing his real condition until after conjugal relations. While she condoned this conduct upon his part by continuing to live with him for about two years before the final separation, his manner of living and his conduct toward her was not such as to encourage confidence. This conduct upon his part was no doubt uppermost in her mind, and while she had reluctantly agreed that they sell their household goods and she would go with him to Texas she was still apprehensive, and to re-assure herself she made the modest request that he would promise her to amend his ways and treat her properly if she should go. In view of the fact that only a few nights before he had come home in a drunken condition and had to be put to bed, and as a result was rendered sick, and then to say to her that she could do as she God damn pleased about going, we think was sufficient discouragement, willfully made on the part of the complainant, to discourage her from going, and amounted to withdrawing any invitation that he had extended, if, indeed he had ever extended a serious invitation to her to go with him. We think this wife showed devotion and patience by condoning his past conduct, and was genuinely desirous of living with the complainant, and that her apprehensions were well founded, and clearly constituted sufficient cause for refusing to go with him. We cannot agree with the finding of the Chancellor to the effect that she willfully deserted the complainant. This record, we think, is pregnant with facts and circumstances, that the complainant never seriously and sincerely intended to take his wife and child with him to Texas. While it is true the husband has the legal right to select the domicile, and it is the duty of the wife to go with her husband to the home of his selection, and to reside with him where he desires to live, and if the complainant had been sincere in soliciting his wife to go with him to Texas, and she had willfully refused to do so, without good or sufficient cause, she would have been guilty of willful desertion. We are also of the opinion that under all the facts and circumstances she was

well warranted in declining to go with her husband, and that she was not guilty of willful desertion without good or sufficient cause. We will add that another potent circumstance which shows his lack of sincerity, is the fact that the complainant, after he left her, has never written her a line and never invited her to come to him, and has never shown the slightest interest in having her live with him since the time of the separation. We are not unmindful of the general rule that it is not incumbent upon a complainant to solicit a wife to return after she has willfully deserted him. But we mention the fact of his failure to write to her, or to show any interest in having her live with him, as a further circumstance tending to show his utter indifference, and also to show his lack of sincerity in extending the invitation that she go with him at the time the separation occurred.

It results that the decree of the Chancellor is affirmed. The complainant and his sureties will pay the costs of this cause including the costs of this appeal.

Heiskell and Owen, JJ., concur.